## ACE Funding Source LLC v Lasen Inc

2025 NY Slip Op 31911(U)

May 30, 2025

Supreme Court, Kings County

Docket Number: Index No. 513119/2025

Judge: Reginald A. Boddie

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Commercial Part 12 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, located at 360 Adams Street, Borough of Brooklyn, City and State of New York on the 30th day of May 2025.

P R E S E N T:
Honorable Reginald A. Boddie
Justice, Supreme Court

-------------------------------------------------------------------x

ACE FUNDING SOURCE LLC,

Plaintiff,

-against-

LASEN INC, JF AVIATION LLC,
SKYSKOPES INC and JEFF FARSTAD
a/k/a JEFFREY LEON FARSTAD,

Defendants,

-------------------------------------------------------------------x

Index No. 513119/2025

Cal. No. 3     MS 1

**Decision and Order**

The following e-filed papers read herein:
MS 1

NYSCEF Doc Nos.
10-32; 45-53

Defendants' motion for a preliminary injunction is decided as follows:

### Background

This action arises from alleged breaches of a Sale of Future Receipts Agreement dated March 13, 2025 (the "Agreement"), in which defendants Lasen Inc., JF Aviation LLC, and Skyskopes Inc. (collectively, the "Sellers") allegedly defaulted on their payment obligations, and defendant Jeff Farstad a/k/a Jeffrey Leon Farstad ("Farstad") allegedly failed to satisfy his personal guaranty, leaving a balance of $624,580.00 owed to plaintiff.

1

[* 1]

Defendants move by order to show cause for a temporary restraining order and preliminary injunction to enjoin plaintiff from continuing any collection activities, including ACH withdrawals, UCC lien enforcement, and the issuance of UCC § 9-406 letters to defendants' clients and customers. Defendants further request the rescission of enforcement actions already taken and the return of any restrained funds, arguing that absent injunctive relief, they face irreparable harm—including loss of revenue, reputational damage, and potential collapse of their businesses. Defendants contend that the underlying Agreement is a criminally usurious loan, void ab initio under New York law, rather than a legitimate sale of future receivables. Defendants argue that the Agreement imposes an absolute repayment obligation, with an effective interest rate well above the 25% criminal usury cap, and lacks genuine risk transfer or reconciliation mechanisms. Defendants also assert that plaintiff has engaged in tortious interference with their business relationships by sending misleading 9-406 notices, attempting to divert payments from senior lienholders, and initiating improper UCC filings. Additionally, defendants claim plaintiff breached the Agreement by initiating collection efforts prior to any default and failed to provide consideration to several of the parties it now seeks to bind.

In opposition, plaintiff argues that defendants materially breached the valid and enforceable Agreement by defaulting on payments without justification and ignoring plaintiff's attempts to reconcile the remittance schedule. Plaintiff asserts that it purchased 29.67% of defendants' future receivables for $500,000 less fees, and when defendants ceased remitting daily ACH payments and failed to respond to communications, plaintiff lawfully exercised its contractual and UCC rights, including filing a UCC-1 Financing Statement and issuing UCC § 9-406 lien notices to defendants' account debtors. Plaintiff contends that defendants' criminal usury defense is meritless because the Agreement is not a loan, but rather a contingent, non-recourse

2

purchase of future receivables, evidenced by its reconciliation provisions, lack of a fixed term, and express recognition that bankruptcy is not a default. Plaintiff also argues there was no tortious interference because it acted pursuant to explicit contract rights and applicable UCC law. Additionally, plaintiff rejects defendants' claim that Skyskopes and JF Aviation were not parties to the Agreement, pointing to their inclusion in the signed document and Farstad's authority to bind them. Plaintiff asserts that defendants' claimed harm is speculative and compensable by money damages, and that the balance of equities favors enforcing the contract, not rewriting it post-breach.

## Discussion

"Although the purpose of a preliminary injunction is to preserve the status quo pending a trial, the remedy is considered a drastic one, which should be used sparingly" (*Alayoff v Alayoff*, 112 AD3d 564, 565 [2d Dept 2013] [citation omitted]). "To obtain a preliminary injunction, a movant must establish, by clear and convincing evidence, (1) a likelihood of success on the merits, (2) irreparable injury absent a preliminary injunction, and (3) a balancing of the equities in the movant's favor" (*id.*). "The movant must show that the irreparable harm is imminent, not remote or speculative" (*Family-Friendly Media, Inc. v Recorder Tel. Network*, 74 AD3d 738, 739 [2d Dept 2010] [citations and internal quotation marks omitted]). "Moreover, [e]conomic loss, which is compensable by money damages, does not constitute irreparable harm" (*id.*). "The decision to grant or deny a preliminary injunction lies within the sound discretion of the Supreme Court" (*id.*).

"The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be" (*Principis Capital, LLC v I Do, Inc.*, 201 AD3d 752, 754 [2d Dept 2022] [citation omitted]). "To determine whether a transaction constitutes a usurious loan: [t]he court must examine whether the

3

plaintiff is absolutely entitled to repayment under all circumstances" (*id.* [internal quotation marks omitted]). "Unless a principal sum advanced is repayable absolutely, the transaction is not a loan" (*id.*). "Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy" (*id.*).

Here, defendants fail to demonstrate any likelihood of success on the merits of their criminal usury claim, as plaintiff established as a matter of law that the transaction set forth in the Agreement was a purchase of future receivables, not a loan. The Agreement here contains specific provisions that defeat a claim of absolute repayment—an essential element of any usurious loan claim. As set forth in Section 4 of the Agreement, upon request by either party and submission of relevant documentation, plaintiff is obligated to adjust the daily remittance amount to match the agreed-upon percentage of actual receipts. It is undisputed that defendants failed to submit any such request pursuant to Section 4 of the Agreement. Moreover, the Agreement lacks a finite term for repayment, as payments are to continue until the purchased amount is collected, without any specified deadline. Furthermore, the Agreement expressly acknowledges the risk of business downturn or bankruptcy and does not treat such events as defaults, as Section 6 of the Agreement makes clear that plaintiff assumes the risk that the full purchased amount may never be remitted if the business fails or ceases operations in the ordinary course. Accordingly, given that the Agreement includes a reconciliation provision, lacks a finite term, and expressly disclaims default in the event of bankruptcy, defendants fail to demonstrate any likelihood of success on the merits of their criminal usury claim.

[* 4]

"In order to state a cause of action to recover for tortious interference with prospective economic advantage, the plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered" (*Influx Capital, LLC v Pershin*, 186 AD3d 1622, 1624 [2d Dept 2020] [citation omitted]). "The plaintiff must plead more culpable conduct than required for tortious interference with existing contracts" (*id.* [internal citation marks omitted]). "This standard is met where the interference with prospective business relations was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party" (*id.*). "Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract" (*Carvel Corp. v Noonan*, 3 NY3d 182, 191 [2004] [citations and internal quotation marks omitted]). "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort" (*id.*). "Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations" (*id.*). If "[plaintiffs] have not shown that [defendants'] conduct was criminal or independently tortious, they cannot recover unless an exception to the general rule is applicable" (*id.*). "Such an exception has been recognized where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs" (*id.* [internal quotation marks omitted]).

Here, defendants fail to demonstrate any likelihood of success on the merits regarding their tortious interference with prospective economic advantage claim. Defendants have not identified any specific customer or prospective economic relationship that plaintiff allegedly disrupted; instead, defendants offer speculative and conclusory assertions that "[b]ecause [plaintiff] has already sent 9-406 letters to a number of [d]efendants' customers, it can be inferred that [plaintiff]

5

[* 5]

will imminently send letters to all of [d]efendants' customers and potential revenue sources seeking to enforce [d]efendants' remedies under Uniform Commercial Code 9-406" and that "[plaintiff] has used and imminently will continue to use its UCC-1 lien to tortiously and intentionally interfere with every aspect of [d]efendants' business including all prospective economic advantages."

Moreover, defendants fail to show that plaintiff's conduct—issuing UCC § 9-406 notices and filing a UCC-1 Financing Statement—was accomplished through wrongful means consisting of criminal conduct or an independent tort, rather than collection efforts enforcing a valid security interest after a borrower's default pursuant to rights expressly granted under the Agreement and in full compliance with Article 9 of the Uniform Commercial Code. Defendants fail to show that plaintiff's conduct is "for the sole purpose of inflicting intentional harm on plaintiffs," as at least one purpose of plaintiff's conduct is to protect its economic interest in collecting purchased receivables following defendants' default. Accordingly, defendants fail to demonstrate any likelihood of success on the merits of their tortious interference with prospective economic advantage claim.

Defendants also fail to demonstrate any likelihood of success on their breach of contract claim. Their sole argument is that plaintiff "alleges that [d]efendants breached the contract on April 8, 2025," yet "sta[r]ted collection efforts as early as the 4th of April, exercising their default remedies in breach of the Agreement, where there had been no declaration of default or demand for payment." However, as plaintiff correctly explains, the reference to April 8, 2025, in the Complaint was a non-substantive, inadvertent typographical error. A review of the record, including email and text correspondence and the payment processing report, confirms that defendants were in default as of April 3, 2025. Accordingly, Plaintiff was entitled to begin

6

[* 6]

exercising its contractual remedies after that date, and defendants' argument does not support a viable claim for breach.

As to defendants' argument that plaintiff fails to state a claim against Skyskopes Inc., JF Aviation LLC, or Farstad, defendants fail to demonstrate any likelihood of success on such defense. Defendants argue that "[b]ecause there was no consideration to those defendants, there is no enforceable contract as to them, and [d]efendants are likely to succeed on the defense of failure to state a claim." However, the Agreement explicitly and unambiguously defines "Seller" as "LASEN, INC. AND ALL ENTITIES WHO SIGN BELOW AS SELLER." Both Skyskopes Inc. and JF Aviation LLC are named sellers in the Agreement, and Farstad signed the Agreement on behalf of each of those entities, as well as on behalf of Lasen Inc. Furthermore, Farstad also executed a personal guaranty in support of the Agreement. In addition, Section 18 of the Agreement states: "[e]ach Seller agrees that it is jointly and severally liable to Buyer for the obligation to deliver the Purchased Amount from its own Future Receipts," confirming that each of the defendant entities undertook a direct and independent liability to plaintiff, and that plaintiff relied on these collective representations in entering the Agreement.

As Defendants fail to establish any likelihood of success on the merits of any of their claims or defenses, they have not met the threshold requirement for the issuance of a preliminary injunction. Accordingly, defendants' request for injunctive relief must be denied.

[The remainder of this page is intentionally left blank.]

7

## Conclusion

Based on the foregoing, defendants' motion for a preliminary injunction is denied. The previously granted temporary restraining order dated May 8, 2025, is hereby vacated. Any argument not explicitly addressed herein was considered and deemed to be without merit or unnecessary to address given the court's determination.

ENTER:

_____
Honorable Reginald A. Boddie
Justice, Supreme Court

**HON. REGINALD A. BODDIE
J.S.C.**

8

[* 8]